**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| **LUIS A. PAGAN,** | : | |
| *Plaintiff*, | : | |
| | : | |
| v. | : | **No. 3:18-cv-1668 (VLB)** |
| | : | |
| **CAPTAIN DOUGHERTY, et al.** | : | |
| *Defendants.* | : | **June 26, 2019** |

**INITIAL REVIEW ORDER**

On October 9, 2018, the plaintiff, Luis A. Pagan ("Plaintiff" or
"Pagan") an inmate currently confined at Northern Correctional Institution
("NCI") in Somers, Connecticut, filed a complaint *pro se* pursuant to 42
U.S.C. § 1983, against six Department of Correction ("DOC") officials in
their individual and official capacities: Captain Dougherty, Lieutenant
Tamarro, Lieutenant King, District Administrator Maldonado,
Commissioner Semple, and Correction Officer Kudzal  (collectively
"Defendants")  Compl. (Dkt. No. 1).

Pagan claims that Defendants violated his rights under the First,
Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States
Constitution and Article First, Sections 6 and 20 of the Connecticut
Constitution.  *Id.* at 11-13.  He seeks monetary, injunctive, and declaratory
relief.  *Id.* at 1.

Plaintiff also filed a motion to proceed *in forma pauperis* . On
October 12, 2018, Magistrate Judge William I. Garfinkel granted the
plaintiff's motion to proceed *in forma pauperis.*  [Dkt. No. 8]

Plaintiff also filed a motion for preliminary injunctive relief and a motion for appointment of counsel. [Dkt. Nos. 3 and 4, respectively] These motions are pending before the court.

For the following reasons, the complaint is dismissed in part and the motions are denied.

## I. Standard of Review

Pursuant to 28 U.S.C. § 1915A, this Court must review prisoner civil complaints and dismiss any portion of the complaint that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief. Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a right to relief. *Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). Conclusory allegations are not sufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 550 U.S. at 570. Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of America*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)).

## II. Factual Allegations

At approximately 9:50 a.m. on June 9, 2017, while he was confined in Cell 117 of the G-pod housing unit at the Corrigan-Radgowski Correctional Institution ("CRCI") in Uncasville, Connecticut, unit officers instructed Plaintiff that "intel officers" wanted to speak with him.  Compl. (Statement of Facts) ¶ 1.  The unit officers directed Plaintiff to their office outside the G-pod unit.  *Id.*  There, Captain Dougherty and Lieutenant Tamarro ordered Plaintiff to sit down and then proceeded to question him about gang activity in his unit.  *Id.* at ¶¶ 2-3.  Plaintiff told Dougherty and Tamarro that he is not a gang member and was not involved in any gang activities.  *Id.*  Both defendants laughed, showed  Pagan a pile of letters that they claimed were Security Risk Group ("SRG") material, and asked him, "Do you know anything about those?"  *Id.* at ¶ 4.  Plaintiff told them that he had nothing to do with the letters.  *Id.*  The defendants then informed the plaintiff that the letters, which were SRG material, were found inside Cell 219, which housed another inmate named William Pabon, and that Pabon admitted to possessing them.  *Id.* at ¶ 5.

Throughout the interview, Dougherty and Tamarro attempted to intimidate Plaintiff by accusing him of authoring the letters.  Compl. ¶ 6.  They argued that they could pin the evidence on him because he was a former member of the Bloods gang.  *Id.*  Dougherty said that Plaintiff's alias "Two Pound" was found in the letters and that, consequently, he would be issuing Plaintiff a disciplinary report ("DR") for the SRG material found in Pabon's possession.  *Id.* at ¶ 7.

Pagan reaffirmed that he had nothing to do with any SRG material, that he is not a gang member, and that the alias "Two Pound" is a common name. Compl. ¶ 8. He told Dougherty that he would not admit guilt to the DR, nor would be become a "jailhouse snitch." *Id.* Dougherty replied, "If it ha[s] nothing to do with you, then help yourself by helping us." *Id.* at ¶ 9. Plaintiff refused and told Dougherty that it was his job to investigate the matter. *Id.* at ¶ 10. Dougherty ended the interview by telling Plaintiff, "We gave you an opportunity to confess. [W]e know you authored the paperwork so . . . you'll be placed in segregation pending a [DR] for SRG . . . affiliation," a Class 2 offense. *Id.* at ¶ 11.

Dougherty concluded there was sufficient basis to charge Plaintiff with A violation of DOC Administrative Directive 9.5, § 12(Z) and issued Pagan a DR for SRG affiliation. Plaintiff was placed in a restrictive housing unit ("RHU") pending resolution. Compl. ¶¶ 12-13, 19. The DR stated that inmate Pabon was found to be in possession of several SRG (Bloods gang) material and that, after further investigation, it was determined that the plaintiff authored the material in an effort to recruit Pabon into the gang. *Id.* at ¶ 14; Pl.'s Ex. 1 (Dkt. No. 1 at 17).

The DR does not state the exact location where the SRG material was found. Compl. ¶ 14. The plaintiff was not given advanced notice of the hearing on the DR, nor was he provided with a SRG Determination Form, as required by DOC Administrative Directive 6.14, § 7(A).[1] *Id.* at ¶ 17.

---

[1] DOC Administrative Directive 6.14, § 7(A) provides:

On June 12, 2017, Disciplinary Investigator Kudzal came to Plaintiff's cell in the RHU in order to retrieve the his two-page, handwritten statement, which would be used in support of his defense at the DR hearing. Compl. ¶ 20. Plaintiff told Kudzal that he waived his right to an advocate for the hearing but that he wanted a written statement from Pabon, who possessed the SRG material. *Id.* at ¶ 21. Kudzaul told Plaintiff that he would obtain a statement from Pabon. *Id.*

On June 14, 2017, Pagan gave Kudzal a second written statement to use in his defense at the hearing. Compl. ¶ 22. Kudzal then informed Plaintiff that he had retrieved a written statement from inmate Pabon. *Id.* Plaintiff asked Kudzal what Pabon's statement revealed. *Id.* at ¶ 23. Kudzal said that he could not give Plaintiff a copy of inmate Pabon's statement but

---

When there is reason to believe that an inmate is a [SRG] Member, the Unit Administrator or designee shall initiate the process for designation of an inmate as a [SRG] Member by following the notice and hearing procedures set forth in Administrative Directive 9.5, Code of Penal Discipline and Section 6 of this Directive, except that form CN 61401, [SRG] Hearing Notification and page one of CN 61402, [SRG] Member Determination, shall be provided as notice to the inmate. A hearing shall be held and presided over by a Hearing Officer. Notification of the hearing shall be made to the Director of Security or designee utilizing CN 61406, [SRG] Hearing Notification - Security Division prior to the hearing. When the Hearing Officer has evidence to show that an inmate is affiliated with a [SRG], the inmate shall be designated as a [SRG] Member. A completed copy of page two of CN 61402, [SRG] Member Determination shall be given to the inmate upon completion of the hearing.

that it acknowledged that Plaintiff had nothing to do with the SRG material found in Pabon's cell.  *Id.*

Plaintiff's DR hearing was scheduled for June 15, 2017 before Lieutenant King.  Compl. ¶ 24.  At the hearing, King read the report submitted by Dougherty and other incident reports which were inconsistent with Dougherty's statements.  *Id.* at ¶ 25.  This "misled the plaintiff in preparing for his defense."  *Id.*

King then asked Plaintiff for his plea to the DR, to which Pagan responded, "Not Guilty."  Compl. ¶ 26.  Plaintiff asked King to review the statements written by Pabon and him, but King refused, claiming that the staff members' reports were sufficient and outweighed Plaintiff's evidence. *Id.* at ¶ 27.  Plaintiff argued that the DR was vague and that the DOC does not have experts trained to analyze the handwriting of the SRG material to determine whether the plaintiff in fact authored it.  *Id.* at ¶ 28.

King then stated that the evidence implicating Plaintiff was the discovery of the alias name "Two Pound" in the material, but Plaintiff argued that he could not be found to be affiliated with the SRG solely based on the belief that the name "Two Pound" referred to him.  Compl. ¶¶ 29-30.  He told King that the DR fails to reveal any other evidence showing that he had authored the SRG material.  *Id.* at ¶ 31.

King found Pagan guilty of SRG affiliation and designated him as a member of the Bloods gang.  Compl. ¶ 32.  In her written disposition, King stated that her basis for the finding was "staff observation and

documentation submitted." *Id.* She imposed a sanction of 730 days (2 years) in segregation, 15 days of punitive segregation, 60 days loss of visits, and 60 days loss of commissary. *Id.* at ¶ 33. Thereafter, Plaintiff was officially designated as a Bloods gang member and transferred to NCI, where he entered Phase 1 of the SRG program. *Id.* at ¶ 34.

On June 16, 2017, Plaintiff filed an appeal of the DR finding to District Administrator Maldonado. Compl. ¶ 35. Maldonado responded to the appeal on July 6, 2017 but failed to correct what the plaintiff claimed were numerous due process violations in the DR proceedings at CRCI. *Id.* In support of his decision affirming the DR finding, Maldonado wrote:

> The Hearing Officer's finding was reasonable based on information and evidence presented at a formal hearing. Documentation submitted to the presiding Hearing Officer substantiates that after a random cell shakedown was conducted in your cell (G-pod 219)[2] on your bunk was a piece of paper with what appeared to be instructions on how to perform hand signals and a manila envelope was also found with what appeared to be additional SRG material. After an extensive facility investigation, it has been determined that you are affiliated with the SRG "Bloods." Therefore, it has been determined that you meet the criteria, as described in A.D. 6.14, Security Risk Group.

Pl.'s Ex. 2 (Dkt. No. 1 at 18).

Plaintiff appealed the DR finding and Maldonado's decision to Commissioner Semple. Compl. ¶ 36. Director of Security Christine Whidden responded to Plaintiff's appeal, stating that Plaintiff was the

_____

[2] In his complaint, the plaintiff alleges that he was assigned to Cell 117 at CRCI and that Pabon was assigned to 219, which is where the SRG material was found. Thus, there appears to be a factual dispute as to whether the plaintiff occupied the cell where the material was found.

author of the SRG material and that he is the only inmate known to be "representing that particular set of Bloods for many years within the . . . DOC." *Id.*

As a result of his placement in segregation, Plaintiff remains confined to his cell for 23 hours on weekdays and 24 hours on Saturdays and Sundays. Compl. ¶ 38. He is only permitted three showers per week and has lost his eligibility for parole, visits from friends and loved ones, the opportunity to call his loved ones everyday via telephone, the freedom to associate, and access to educational and vocational services. *Id.*

III.  Analysis

Plaintiff claims Defendants violated his constitutional rights by falsely accusing him of authoring SRG material, denying him due process during the DR proceedings, and subjecting him to unlawful conditions of segregated confinement as a result of the DR finding. Compl. at 11-14. He seeks monetary damages, an injunction ordering the defendants to expunge the DR finding and remove him from segregation, and a declaration that DOC Administrative Directive 9.5, § 12 is unconstitutionally vague. *Id.* at 15. The Court will now address each constitutional claim.

A. First Amendment Claim

The plaintiff claims that Dougherty and Tamarro violated his "right to speak freely" and retaliated against his refusal to provide them with gang activity information by filing a false DR against him. Compl. at 11.

"Prison officials may not retaliate against inmates for exercising

their constitutional rights." *Riddick v. Arnone*, No. 3:11-CV-631 (SRU), 2012 WL 2716355, at *6 (D. Conn. Jul. 9, 2012). "To prevail on a First Amendment retaliation claim, [a prisoner] must establish (1) that the speech or conduct at issue was protected, (2) that the [official] took adverse action against the [prisoner], and (3) that there was a causal connection between the protected [conduct] and the adverse action." *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (internal quotation marks omitted); *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009).

The court first addresses whether Pagan's speech was protected by the First Amendment. Pagan does not identify the specific speech he claims is protected. He claims he both made and refused to make statements. Construing his complaint in the light most favorable to him so as to identify any elements his complaint might allege, the court construes the complaint to allege Pagan's refusal to speak was protected speech. *See Sykes v. Bank of America*, 723 F. 3d at 403 (pro se complaints must be "construed liberally and interpreted to raise the strongest arguments that they suggest").

Pagan's insistence that he knew nothing about the writing and refusal to retract his denial and provide information about the writing is protected speech. In *Jackler v. Byrne*, 658 F.3d 225 (2d Cir. 2011), where a probationary police officer brought First Amendment retaliation action against police officials asserting reprisals for his refusals to make false statements in an investigation into civilian complaint of excessive force,

the Second Circuit held that the police officer's refusal to retract his truthful report and make statements that would have been false constituted protected speech on a matter of public concern. *See Jackler*, 658 F.3d at 240-42. Similarly, Pagan's refusal to retract his denial of any knowledge about the alleged gang information is a matter of public concern. Assuming the facts alleged are true and viewing them in the light most favorable to Pagan, his refusal to retract a truthful statement during an investigation aimed at identifying a person who posed a security risk to the prison population is a matter of public concern.

Turning to the second element, "[i]n the prison context, 'adverse action' is objectively defined as conduct 'that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights.'" *O'Diah v. Cully*, No. 08-CV-941, 2013 WL 1914434, at *9 (N.D.N.Y. May 8, 2013) (quoting *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003)); *see alo Ramsey v. Goord*, 661 F. Supp. 2d 370, 399 (W.D.N.Y. 2009) (prisoners may be required to tolerate more than average citizens before alleged retaliatory action against them is considered adverse).

In order to allege causation, the prisoner must state facts "suggesting that the protected conduct was a substantial or motivating factor in the prison official's decision to take action against [him]." *Moore v. Peters*, 92 F. Supp. 3d 109, 121 (W.D.N.Y. 2015) (quoting *Burton v. Lynch*, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009)).

"Because claims of retaliation are easily fabricated, the courts

consider such claims with skepticism and require that they be supported by specific facts; conclusory statements are not sufficient." *Riddick*, 2012 WL 2716355, at *6; *see also Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) ("virtually any adverse action taken against a prisoner by a prison official – even those otherwise not rising to the level of a constitutional violation – can be characterized as a constitutionally proscribed retaliatory act"). "Accordingly, plaintiffs in retaliatory motive cases must plead 'specific and detailed factual allegations which amount to a persuasive case' or 'facts giving rise to a colorable suspicion of retaliation.'" *Moore*, 92 F. Supp. 3d at 120 (quoting *Johnson v. Eggersdorf*, 8 F. App'x 140, 144 (2d Cir. 2001)).

Plaintiff has presented the factual context of his First Amendment claim. Plaintiff alleges Dougherty told him "[w]e gave you an opportunity to confess. [W]e know you authored the paperwork [because Pagan had been a member of the referenced gang and his alias appeared in the material] so . . . you'll be placed in segregation." Compl. ¶¶ 6, 7 & 9. Even assuming Dougherty and Tamarro were wrong, the sanction imposed based on their honestly held belief is not retaliatory. There are no facts showing that Dougherty and Tamarro did not believe Pagan authored the material and that, instead of acting on that belief, they acted in retaliation for Plaintiff's refusal to speak or because of what he said. Therefore, the First Amendment claim is DISMISSED.

B. <u>Eighth Amendment Conditions of Confinement</u>

The plaintiff claims that the defendants violated his Eighth Amendment protection against cruel and unusual punishment by placing him in segregation pending the disposition of, and after the finding in, the DR hearing.  Compl. at 11.

The Eighth Amendment's prohibition on cruel and unusual punishment includes a prohibition on inhumane conditions of confinement. *Phelps v. Kapnolas*, 308 F.3d 180, 185 (2d Cir. 2002) (citing *Farmer v. Brennan*, 511 U.S. 825, 828 (1994)).  The standard for an inhumane conditions claim contains both an objective and a subjective component: objectively, "the prison officials' transgression" must be "'sufficiently serious'" and subjectively, "the officials [must have] acted, or omitted to act, with a 'sufficiently culpable state of mind,' *i.e.* with 'deliberate indifference to inmate health or safety.'"  *Id.* (quoting *Farmer*, 511 U.S. at 834).  "Under the objective element, while the Constitution 'does not mandate comfortable prisons,' inmates may not be denied 'the minimal civilized measure of life's necessities.'"  *Alster v. Goord*, 745 F. Supp. 2d 317, 335 (S.D.N.Y. 2010) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)).  Thus, prison officials cannot "deprive inmates of their 'basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety.'"  *Id.* (quoting *Helling v. McKinney*, 509 U.S. 25, 32 (1993)).  Prison officials cannot expose prisoners to conditions that may pose an unreasonable risk of serious damage to the prisoners' future health.  *Id.* (citing *Phelps*, 308 F.3d at 185).

In this case, the plaintiff alleges that his placement in segregation deprived him of phone privileges, visits from friends and family, eligibility for parole, and access to educational and vocational services.  Compl. ¶ 38. He also contends that he is confined in his cell 23 to 24 hours per day and is only granted three showers per week.  *Id.*

These conditions do not support an Eighth Amendment claim for inhumane conditions of confinement.  *See Bernier v. Sweet*, No. 15-CV-209 (RJA) (HBS), 2018 WL 1047103, at *3 (W.D.N.Y. Feb. 26, 2018) (normal conditions of segregation permitting only two showers per week did not constitute sufficient deprivation under Eighth Amendment); *Marrero v. Weir*, No. 3:13-CV-0028 (RNC), 2014 WL 4799228, at *3 (D. Conn. Sept. 26, 2014) (loss of phone and visitation privileges do not amount to sufficiently serious deprivation under Eighth Amendment); See *Charles Christopher Fonck III v. Semple*, No. 3:18-CV-1283 (KAD), 2018 WL 4654700, at *5 (D. Conn. Sept. 27, 2018) (dismissing conditions of confinement claim grounded in denial of educational and job opportunities and eligibility for parole);.  The plaintiff has not alleged a sufficient deprivation to state a plausible inhumane conditions of confinement claim.  Therefore, the Eighth Amendment claim is DISMISSED.

C.  Claim under the Fifth  Amendment

The plaintiff claims that the defendants violated his right to due process under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution.  Compl. at 11-13.  However, the Fifth and Sixth

Amendments do not apply in this context. The Fifth Amendment applies to the federal government, not to the states; *see Dusenbery v. United States*, 534 U.S. 161, 167 (2002) (due process clause of Fifth Amendment prohibits the United States, as due process clause of Fourteenth Amendment prohibits the States, from depriving any person of property without due process of law); *Ambrose v. City of New York*, 623 F. Supp.2d 454, 466–67 (S.D.N.Y. 2009). Plaintiff's Fifth Amendment claim is DISMISSED.

### D. Fourteenth Amendment Due Process

The plaintiff may state a claim under the Fourteenth Amendment for what he contends amounted to due process deprivations in the DR proceedings at CRCI. He argues that he was deprived of adequate notice of the SRG affiliation charge and the right to present a defense.

The standard analysis for a claim of a violation of procedural due process "proceeds in two steps: We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

In the prison context (involving someone whose liberty interests have already been severely restricted because of his confinement in a prison), a prisoner must show that he was subject to an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). In *Sandin*, the Supreme Court concluded that a prisoner who was subject to a disciplinary term of thirty

days confinement in restrictive housing did not sustain a deprivation of a liberty interest that was subject to protection under the Due Process Clause. *Id.* at 486. Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004).

As to the second step of the analysis, the procedural safeguards to which plaintiff is entitled before being deprived of a constitutionally significant liberty interest are well-established. These requirements include: (1) written notice of the charges; (2) the opportunity to appear at a disciplinary hearing and a reasonable opportunity to present witnesses and evidence in support of the defense, subject to the correctional institution's legitimate safety and penological concerns; (3) a written statement by the hearing officer explaining his decision and the reasons for the action being taken; and (4) in some circumstances, the right to assistance in preparing a defense. *See Wolff v. McDonnell*, 418 U.S. 539, 564–69 (1974); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004).

In this case, the plaintiff has sufficiently alleged the deprivation of a liberty interest. As a result of the DR finding, he was placed in segregation for 730 days (2 years) and lost phone, visitation, and commissary privileges. Compl. ¶¶ 23, 38. He also alleges facts showing that he was deprived of basic procedural safeguards during the disposition of his DR. He alleges that the report issued by Dougherty and Tamarro failed to

provide adequate notice of the SRG affiliation charge and that King, who presided over the DR hearing, refused to review the written statements that supported his defense to the charge. Maldonado, who reviewed the report and DR proceedings, allegedly failed to correct these procedural deprivations. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (plaintiff may establish personal involvement of supervisory official by showing that official learned about deprivation through report or appeal and failed to remedy wrong). Based on the foregoing, the Court will permit the plaintiff's Fourteenth Amendment due process claim to proceed against Dougherty, Tamarro, King, and Maldonado in their individual capacities for damages and in their official capacities for injunctive relief.

The plaintiff has not, however, alleged sufficient facts showing Kudzal's or Semple's personal involvement in the due process violations. According to the plaintiff, Kudzal assisted him in preparing his defense for the DR hearing by retrieving his handwritten statements and obtaining a written statement from inmate Pabon. Compl. ¶¶ 20-22. He also responded to the plaintiff's request for information regarding Pabon's statement. *Id.* at ¶ 23. There are no facts showing that Kudzal had any involvement in the initiation of the DR or the decisions made during the DR hearing. As for Semple, there are no facts suggesting that he even knew about, much less played a role in perpetrating or facilitating, the alleged due process violations. Therefore, the due process claims against Dougherty, Tamarro,

King, and Maldonado will PROCEED.  Those against Kudzal and Semple is DISMISSED.

### E. Sixth Amendment Right to Counsel

Plaintiff cannot state a claim under the Sixth Amendment, which guarantees criminal defendants the right to counsel.  An inmate's right to assistance is limited, and an inmate has no right to full counsel in a disciplinary proceeding. *Silva v. Casey*, 992 F.2d 20, 22 (2d Cir. 1993) (per curiam).  *See U.S. v. Gouveia,* 467 U.S. 180, 187-88 (1984) (finding no right to counsel prior to any adversarial judicial proceedings for inmates who were administratively segregated following an investigation and disciplinary hearing); *Loving v. Selsky*, No. 07-CV-6393L (DGL), 2009 WL 87452, at *2 (W.D.N.Y. Jan. 12, 2009) ("[A]n inmate's right to assistance in connection with a disciplinary hearing – which arises under the Due Process Clause of the Fourteenth Amendment . . . falls far short of the right to counsel that the Sixth Amendment guarantees to criminal defendants") (citations omitted).

When inmate is confined to a restrictive housing unit he does have the right to some assistance to mount a defense, including the right to assistance in marshaling the evidence and presenting a defense.  *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988).   Plaintiff received the assistance of an advocate who conducted an investigation, disclosed to Pagan exculpatory evidence and presented Pagan's defense material.  Compl. ¶¶ 20-23.  Therefore, Plaintiff received the assistance to which he was entitled

and accordingly his Sixth Amendment claim is DISMISSED.

F. <u>State Constitutional Claims</u>

The plaintiff also brings due process claims under Article First, §§ 6 and 20 of the Connecticut Constitution. Article First, § 6 concerns criminal prosecutions for libel, and therefore, does not apply in this context. Moreover, there is no private cause of action for money damages for violations of Article First, § 20. *See Ward v. Housatonic Area Regional Transit Dist.*, 154 F. Supp. 2d 339, 356 (D. Conn. 2001). Thus, the state constitutional claims are DISMISSED.

G. <u>Declaratory Relief</u>

In addition to damages and injunctive relief, the plaintiff seeks a declaration that DOC Administrative Directive 9.5, § 12(Z) is unconstitutionally vague. Compl. at 15. Declaratory relief serves to "settle legal rights and remove uncertainty and insecurity from legal relationships without awaiting a violation of that right or a disturbance of the relationship." *Colabella v. American Institute of f Certified Public Accountants*, No. 10-CV-2291 (KAM) (ALC), 2011 WL 4532132, at *22 (E.D.N.Y. Sep. 28, 2011) (citations omitted). It operates prospectively to enable parties to adjudicate claims before either side suffers great damages. *See In re Combustion Equip. Assoc., Inc.*, 838 F.3d 35, 37 (2d Cir. 1998). Although the plaintiff contests the general application of DOC Administrative Directive 9.5, § 12(Z), his complaint concerns the disposition of one disciplinary charge against him. He has not identified

any legal relationships or issues that require resolution by declaratory relief.  *See Ward v. Thomas*, 207 F.3d 114, 119-20 (2d Cir. 2000) (Eleventh Amendment bars declaration that state violated federal law in the past). Therefore, the request for declaratory relief is unwarranted and is hereby DISMISSED.

    H.  <u>Motion for Preliminary Injunctive Relief</u>

    In addition to his complaint, the plaintiff has filed a "Motion for a Temporary Injunction," which seeks the same injunctive relief as his complaint: dismissal of the DR report and finding and removal from segregation.  Mot. for Prelim. Inj. (Dkt. No. 3).  He argues that (1) he has no adequate legal remedy, (2) he will suffer irreparable harm in the absence of an injunction, (3) he is likely to succeed on the merits of his claim, and (4) the balance of equities supports a preliminary injunction.

    Preliminary injunctive relief is an extraordinary remedy and is never awarded as a matter of right.  *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008); *Johnson v. Newport Lorillard*, No. 01-CIV-9587 (SAS), 2003 WL 169797, at *1 (S.D.N.Y. Jan. 23, 2003).  A movant seeking a preliminary injunction must establish (1) irreparable harm in the absence of the injunction and (2) either a likelihood of success on the merits or sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.  *Jolly v. Coughlin*, 76 F.3d 468, 473 (2d Cir. 1996); *Shapiro v. Cadman*

*Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995); *Mitchell v. Cuomo*, 748 F.2d 804, 806 (2d Cir. 1984).

With respect to the first prong, courts will presume that a movant has established irreparable harm in the absence of injunctive relief when the movant's claim involves the alleged deprivation of a constitutional right. *Jolly*, 76 F.3d at 482; *Mitchell*, 748 F.2d at 806. However, the likelihood of irreparable harm must be "actual and imminent," not speculative. *Lopez v. McEwan*, No. 3:08-CV-678 (JCH), 2010 WL 326206, at *8 (D. Conn. Jan. 22, 2010) (quoting *New York v. Nuclear Regulator Comm'n*, 550 F.2d 745, 775 (2d Cir. 1977)).

If the moving party is seeking a "mandatory injunction," meaning an injunction that changes the status quo by commanding the opposing party to perform a positive act, then he must satisfy an even higher standard of proof with respect to the second prong. *Lopez*, 2010 WL 326206, at *8. He "must make a clear or substantial showing of a likelihood of success on the merits . . . a standard especially appropriate when a preliminary injunction is sought against the government." *Id.* (quoting *D.D. ex rel. V.D. v. New York City Bd. of Educ.*, 465 F.3d 503, 510 (2d Cir. 2006)). "[A] mandatory preliminary injunction 'should issue only upon a clear showing that the moving party is entitled to the relief requested, or where extreme or very serious damage will result from a denial of preliminary relief.'" *Banks v. Annucci*, 48 F. Supp. 3d 394, 421 (N.D.N.Y. 2014) (quoting *Citigroup*

*Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 n.4 (2d Cir. 2010)).

The Court does not conclude that the plaintiff has made a substantial showing of a likelihood of success on the merits of his due process claim to warrant preliminary injunctive relief. First, at the disciplinary hearing evidence was presented that Plaintiff authored the gang material, namely his alias appeared in the material and the handwriting appeared similar to his. Compl. ¶¶6, 7, 28-30. The independent hearing officer and trier of fact found this evidence persuasive. Further, there remain factual issues regarding the disposition of his DR charge that directly implicate the grounds for his due process claim, such as the exact location where the SRG material was found and whether the plaintiff occupied the cell where the material was found. Compl. ¶¶ 27-31. Therefore, the motion for preliminary injunctive relief is DENIED without prejudice to refiling to refiling at a later stage of litigation upon a showing of all the elements described above and particularly a likelihood of prevailing on the merits.

I. Motion for Appointment of Counsel

The plaintiff has also filed a motion for the appointment of *pro bono* counsel to represent him in this case. Mot. for the Appointment of Counsel (Dkt. No. 4). He argues that he is unable to afford counsel, that the issues in this case are complex, that he has limited access to legal research materials, and that he suffers from mental health problems that prohibit him from investigating the case. *Id.*

"The [C]ourt may request an attorney to represent any person unable to afford counsel." 42 U.S.C. § 1915 (e)(1). "District courts exercise substantial discretion in deciding whether to appoint counsel . . . ." *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 204 (2d Cir. 2003). The Second Circuit has cautioned the district courts against the "routine appointment of counsel." *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 173-74 (2d Cir. 1989). Before the appointment of counsel is even considered, the indigent plaintiff must establish that he is unable to obtain counsel, and his claim must pass the test of likely merit. *Id.* at 173; *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986). "[E]ven where the claim is not frivolous, counsel is often unwarranted where the indigent's chances of success are extremely slim." *Cooper*, 877 F.2d at 172. If the Court concludes that the plaintiff's claims are sufficiently meritorious, it should then consider other factors bearing on the need for appointment of counsel, including the plaintiff's ability to investigate the factual issues of the case, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the plaintiff's apparent ability to present the case, and the complexity of the legal issues involved. *Hodge*, 802 F.2d at 61-62.

The plaintiff has not shown an inability to obtain counsel on his own. He has not indicated whether he was contacted any law firms requesting representation or whether he has sought legal assistance from the Inmate Legal Aid Program. Moreover, the current record, which consists only of a

complaint, is insufficient for this Court to determine whether the claims are sufficiently meritorious and warrant the appointment of *pro bono* counsel. On the contrary, the facts that the decision to classify Plaintiff as a gang member was made by an independent decisionmaker, and that the accusation was initially based on evidence which logically supported a conclusion that Plaintiff authored the gang material, suggest this case is of questionable merit, save for the failure to disclose the inmate statement and, to a lesser extent, the apparent confusion about where the material was found.  Even if the statement had been disclosed, the ultimate decision may have been based on a credibility assessment  which may lessen the importance of the failure to turn over material to Plaintiff and the failure to consider the inmate statement.   Therefore, the motion for appointment of counsel is DENIED without prejudice subject to refiling at a later stage of litigation.

## ORDERS

(1) The plaintiff's Fourteenth Amendment procedural due process claim may proceed against defendants Dougherty, Tamarro, King, and Maldonado in their individual capacities for damages and in their official capacities for injunctive relief.  All other claims are DISMISSED.  The clerk is directed to terminate Kudzal and Semple as defendants to this action.

(2) The Clerk shall prepare a summons form and send an official capacity service packet, including the complaint (Dkt. No. 1) to the United States Marshal Service.  The United States Marshal is directed to effect

service of the complaint on defendants Dougherty, Tamarro, King, and Maldonado in their official capacities at the Office of the Attorney General, 55 Elm Street, Hartford, CT 06141, within twenty-one (21) days from the date of this order and to file a return of service within thirty (30) days from the date of this order.

(3) The clerk shall verify the current work address for defendants Dougherty, Tamarro, King, and Maldonado with the DOC Office of Legal Affairs, mail a waiver of service of process request packet containing the complaint (Dkt. No. 1) to those defendants at the confirmed addresses within twenty-one (21) days of this order, and report to the Court on the status of the waiver requests on the thirty-fifth (35) day after mailing. If any defendant fails to return the waiver request, the clerk shall make arrangements for in-person service by the U.S. Marshal Service on him/her, and he/she shall be required to pay the costs of such service in accordance with Federal Rules of Civil Procedure 4(d).

(4) The defendants shall file her response to the complaint, either an answer or motion to dismiss, within sixty (60) days from the date the notice of lawsuit and waiver of service of summons forms are mailed to them. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claims recited above. They may also include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Fed. R. Civ. P. 26-37, shall be completed

within six months (180 days) from the date of this order.  Discovery

requests need not be filed with the Court.

      (6) All motions for summary judgment shall be filed within

seven months (210 days) from the date of this order.

      (7) The motion for preliminary injunctive relief (Dkt. No. 3) is DENIED

without prejudice subject to refiling at a later stage of litigation.

      (8) The motion for appointment of counsel (Dkt. No. 4) is DENIED

without prejudice subject to refiling at a later stage of litigation.


      SO ORDERED at Hartford, Connecticut, this 26th day of June, 2019.


                          /s/
                          VANESSA L. BRYANT
                          UNITED STATES DISTRICT JUDGE